**GEO. E. HOFFMAN & SONS, INC., a corporation of the State of Delaware, Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, JOINT COUNCIL NO. 65, a labor organization, et al., Defendants.**

**Civ. A. No. P–3267.**

United States District Court, S. D. Illinois, N. D.

Jan. 10, 1973.

Karl W. Grabemann, Chicago, Ill., Stuart Cohen, Springfield, Ill., Jay G. Swardenski, Peoria, Ill., for plaintiff.

Gerry M. Miller, Milwaukee, Wis., Sidney D. Davidson, Peoria, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause arose upon the complaint of George E. Hoffman & Sons, Inc., hereinafter referred to as Hoffman, against International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Joint Council No. 65, a labor organization, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 627, a labor organization, hereinafter Local 627, and Robert L. Barker, as business representative of each of said labor organizations, for damages under the provisions of Section 303 of the Labor Management Relations Act of 1947. 29 U.S.C. § 187. In general, the complaint, as subsequently amended, alleges that defendants were guilty of unfair labor practices as defined in Section 8(b)(4) of the Act. 29 U.S.C. § 158(b)(4)(i) and (ii), (A), (B), (D).

This cause is now before the court upon plaintiff's motion for summary judgment upon the question of liability against the defendant, Local 627.

The court has before it the pleadings, extensive depositions of the respective parties, the parties' stipulation of undisputed facts, the collective bargaining agreement in force between the parties, and other uncontested written exhibits, including the Official Report of Proceedings before the National Labor Relations Board in the Matter of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 627 and Local #15, and Associated General Contractors of Illinois, Docket No. 38–CD–62, and certain affidavits presented by the parties. The court concludes that there exists no genuine issue as to any material fact for trial on the question of liability, and

that summary judgment must therefore be entered as prayed.

This cause of action was precipitated by a strike by Local 627 against Hoffman, which commenced June 17, 1971 and continued until August 6, 1971. Hoffman's theory of complaint is that the strike was secondary activity, not primary union activity, and therefore an unfair labor practice under the provisions of Section 8(b)(4) of the Act.

Section 8(b)(4) has been construed by the Supreme Court as a proscription against secondary, or boycott-type, activity. Woodwork Manufacturers v. N.L.R.B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). That case contested the validity of a "will not handle" clause of an agreement between a carpenters union and the building construction industry. In the geographic area involved, traditionally and by agreement, blank doors were purchased for all building projects and fabricated and fitted on the job site by carpenter employees of the contractor. When a contractor purchased prefabricated doors, i. e., prefitted with locks, etc., for a construction project, the union forbade its members to hang such doors, resulting in their rejection by the contractor and their replacement with blank doors. That conduct was challenged as an unfair labor practice under subsections 8(b)(4) and 8(e).

The Court held that the challenged conduct had as its object the preservation of work traditionally performed by contractors' employees in the geographic area involved and, thus, was primary activity, and not a violation of the Act.

Pertinently, the Court said that Section 8(b)(4) proscribes boycott union activities against a neutral employer when, in fact, the activity is carried on for its effect elsewhere. *Ibid*, at 632, 87 S.Ct. 1250.

The Court further said:

"The prohibition of subsection (D) against coercion to enforce an employer to assign certain work to one of two unions contesting for it protects

the employer trapped between the two claims. The central theme pervading these provisions of protection for the neutral employer confirms the assurances of those sponsoring the section that in subsection (A) Congress likewise meant to protect the employer only from union pressures designed to involve him in disputes not his own." *Ibid,* at 625–626, 87 S.Ct. at 1258.

At page 645, 87 S.Ct. at page 1268, the Court said:

"The touchstone [whether union activity is primary, and legal, or secondary, and an unfair labor practice] is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer *vis-a-vis* his own employees."

The legality of the activity of which complaint is here made must be measured by the guidelines established by *Woodwork Manufacturers.*

Relevant, uncontested, evidentiary facts are found as follows, in narrative form, as a preface to specific findings of ultimate fact, about which there is likewise no genuine issue.

Hoffman, a Delaware corporation, is engaged in the business of contracting highway paving projects, operating from its principal office in Peoria, Illinois. Local 627 is a labor organization, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, operating in the jurisdictional area of Peoria County, Illinois. At all material times, the parties Hoffman and Local 627 were bound by a collective bargaining agreement, captioned "Articles of Construction Agreement," negotiated prior to April 1, 1970, by and between Associated General Contractors of Illinois and the Illinois Conference of Teamsters (herein Agreement).

In the late summer of 1970, Hoffman was the successful bidder upon a contract with the State of Illinois to widen and resurface some sixteen miles of Illinois Routes 90 and 91 near Princeville, in Peoria County.[1] In preparation for that project, Hoffman erected a portable plant on the property of Long Rock Company, near Princeville, to produce and supply the hot mix (asphalt) necessary for completion of the project.

In early 1971, Hoffman entered into oral agreements with Long Rock,[2] Walker Lines[3] and Winzeler[4] to perform certain of the hauling necessary for the project. Winzeler was engaged to haul stone from barges at Peoria and Chillicothe, both in Peoria County, to the plant site. Long Rock was engaged to haul blow sand from outside Peoria County to the site and to participate with Walker in the hot mix haul from the plant to the project. Walker was engaged to haul sand from Chillicothe and fly ash from East Peoria, Illinois, to the plant site, and to participate with Long Rock in the hot mix haul. Each—Winzeler, Long Rock, and Walker—was a party to the Articles of Construction Agreement.

About mid-February, 1971, Hoffman representatives met with defendant Barker, as business representative of Local 627, at which time they discussed and agreed upon Hoffman's seniority list. Barker then had knowledge that Hoffman intended to sell at least one of its fleet of trucks. Between February 13, 1971 and March 1, 1971, Hoffman sold five of its fleet of tandem dump trucks to five individuals. After such sale, Hoffman still owned five tandem trucks and one tractor-trailer unit.

1. The project was bid as a joint venture between Hoffman and Seneca Petroleum Company. Only Hoffman participated in performance of the contract.

2. Long Rock Co., Princeville, Illinois, a corporation engaged in the production and hauling of stone and general hauling.

3. C. A. Walker Truck Lines, Inc., Chillicothe, Illinois, a corporation engaged in general hauling.

4. Winzeler Trucking, Tremont, Illinois, engaged in general hauling.

On March 3, 1971, a pre-job conference related to the paving project·was held at the office of Local 627, between Hackler, General Superintendent of Hoffman, Barker, and representatives of Teamsters Local 15.[5] At that conference, Winzeler and Long Rock were cleared as subcontractors by Barker. Clearance for Walker was later given, following a conversation between Barker and an officer of Walker. It was further agreed by Hoffman that its trucks would "work first" before the subcontractors were used. Barker was then aware that both Long Rock and Walker employed both Local 15 and Local 627 drivers.[6] Thereafter, work began on the project, and there is no indication that Hoffman ever permitted the subcontractors to haul when its own trucks were not working.[7]

On March 18, 1971, Barker phoned Hackler, claiming that he had just learned that Hoffman had sold five of its trucks and that he, Barker, was cancelling the pre-job conference agreement. On the same day, Barker sent Hoffman a telegram, stating:

"I am now informing your company that you are not to use any drivers that are not members of Local 627 to do work in the jurisdiction of Local 627. Any drivers that are members of Local 627 must be cleared by myself. This is in accordance with the agreement between your company and Teamsters Local 627."

Hoffman advised Winzeler, Long Rock, and Walker of the fact of the telegram and supplied each with a copy thereof.

About May 14, 1971, when Hoffman began producing and supplying hot mix to the project, Barker phoned Hackler regarding the content of his earlier telegram. He was told by Hackler that work on the project was underway and that there would be no change in the subcontracting arrangements already made. After the hot mix haul began, Long Rock used some of its Local 15 drivers to haul blow sand to the asphalt plant from sources outside Local 627's jurisdiction and to haul hot mix from the plant to the paving project. Walker also used some Local 15 drivers to haul sand to the plant and to haul hot mix for the paving project.

Barker filed two grievances against Hoffman on May 20, 1971. The first sought pay for Local 627 drivers equal to the pay received by two owner-operators working for Winzeler who earlier had purchased tandem trucks from Hoffman. The other alleged:

"George Hoffman & Sons has trucks working in the Local 627 jurisdiction that do not belong to Local 627. I am demanding that Local 627 people be compensated for all hours worked by these outside drivers."

After filing such grievances, Barker advised Hackler that he was going to demand that Local 627 drivers be paid for all the time worked by Local 15 drivers on the project. Both grievances were heard by the joint committee provided under the Agreement on June 10, 1971. The first, related to the two owner-operators, was deadlocked. Upon the grievance concerning outside drivers, Barker took the position that he had a right to cancel the pre-job conference agreement because he had not been told that Hoffman had sold five of its tandem trucks. He requested that drivers who had not been recalled to work by Hoffman and drivers on the Local 627 referral list receive compensation for all hours worked by Local 15 drivers on the project. Hoffman's position, stated to the committee by Hackler, was that it had a right to rely upon the pre-job conference agreement and that Barker's telegram could not abrogate that agreement.

---

5. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 15, Galesburg, Illinois.

6. Both Hoffman and Winzeler employed only Local 627 drivers on the project.

7. A part of Hoffman's equipment was employed on projects other than the Princeville paving project.

Neither Barker nor Hackler mentioned the fact that only Long Rock and Walker had used the Local 15 drivers involved in the grievance.

By a 5 to 1 vote, the Committee concluded that "Claim of the union be upheld from March 18, 1971, the date the union sent the telegram." The dissenting member of the Committee stated to other members that the grievance should have been against Long Rock and Walker, not against Hoffman.

After the grievance decision, Hoffman ceased work on the project until June 16, 1971. In the interim, Barker and Hackler discussed settlement of the "outside drivers" grievance, in which discussions Barker advised Hackler that he (Barker) would need the payroll records of Long Rock and Walker. At about the same time, Barker asked Walker about particular days and hours worked by Walker's Local 15 drivers in connection with the project.

On June 16, 1971, work was resumed on the project. On that date, Barker asked Hackler if Hoffman intended to comply with the grievance decision against it by paying back pay. Hackler said, "No." On June 17, 1971, picket lines were established by Local 627 at Hoffman's Peoria facility and at the Princeville paving project, and Hoffman's Local 627 employees commenced to strike. The paving project and all other Hoffman projects then in progress within the jurisdictional area of Local 627 were shut down.

The strike continued until August 6, 1971, when the picket lines were removed from Hoffman's Peoria facility and the project site. Hoffman advised its subcontractors of its intention to resume work on the project, leaving to each the decision as to what, if any, adjustment of its employee relationships should be made.

When work was resumed on the project, Walker Lines elected to resume its part of the hauling, using only Local 627 drivers. Long Rock elected to resume hauling blow sand only, and to not participate further in the hot mix haul. Winzeler resumed its hauling in the same manner as before the strike. Hoffman engaged another subcontractor to participate with Walker in the hot mix haul. In the meantime, the original complaint in this cause was filed on June 30, 1971.

## ULTIMATE MATERIAL FACTS

1. The subcontracting of hauling work in conjunction with the highway construction project involved in this litigation was permitted by the Agreement to which both Hoffman and Local 627 were parties.

2. Hoffman, prior to the commencement of construction, had entered into valid subcontracts with Walker, Long Rock and Winzeler, which obligated each of those subcontractors to perform specified parts of the hauling of the materials necessary for Hoffman to perform its contract with the State of Illinois. Hoffman complied with the Agreement by obtaining clearance from Local 627 of its several subcontractors prior to commencement of the hauling work on the project.

3. Hoffman did not employ any drivers who were not members of Local 627 upon the construction project. It was not the employer of any Local 15 or "outside" drivers. The Local 15 drivers who participated in the material hauling related to the project were employed by either Long Rock or Walker.

4. The strike against Hoffman was commenced and carried on for the purpose of compelling a circumstance that only members of Local 627 would be employed in conjunction with the paving project.

5. Barker's demands to Hoffman were all-embracing. Neither correspondence nor his verbal demands on behalf of Local 627 drew any distinction between the hot mix haul within Peoria County and the transporting of materials to the asphalt plant, in part, from outside Peoria County.

6. Hoffman did not violate the Agreement in either its own employee relations in these circumstances or its conduct with respect to its subcontractors. If Local 627 had a legitimate complaint related to the use of Local 15 drivers on the project, its complaint was against Long Rock or Walker, or both of them.

7. It was an object of the strike by Local 627 against Hoffman to compel Hoffman to reorder its contracts with Long Rock and Walker to compel an additional restriction in its said contracts that its subcontractors would employ only Local 627 drivers.

8. It was a further object of the said strike to compel Hoffman to cease doing business with Long Rock and Walker, or to revise its contractual relationship with those companies in a manner compatible with the demands of Local 627 that only its members work on the project.

9. It was a further object of the said strike to compel the reassignment of all truck driving work in conjunction with the project to Local 627 drivers, to the exclusion of Local 15 drivers.

10. The contention of Local 627 that Hoffman, as prime contractor, was the employer of, or responsible for, the employees of its subcontractors is invalid. The primary complaint of Local 627 was against Long Rock, or Walker, or both of them. Hoffman was a neutral party caught between the primary parties to such dispute.

11. The strike against Hoffman was not addressed to the labor relations of Hoffman *vis-a-vis* its own employees. The strike was, therefore, secondary activity, conducted for its effect elsewhere; namely, upon Long Rock, or Walker, or both of them.

There is nothing in the record here to support the contention of Local 627 that the object of its strike was to reclaim work which was customarily allocable to its members. That contention is incompatible with the action of Local 627's having given prior approval of Long Rock and Walker when it then had knowledge that both of those companies employed Local 15 as well as Local 627 employees. Moreover, the Agreement contained the provision that a contractor might bring into the jurisdictional area of a local union up to twenty percent of its employees who were not affiliated with such local union.

Upon the basis of the undisputed facts, the court arrives at the following conclusions.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this cause under the provisions of Section 303 of the Act [8] and of the parties.

2. The practical effect of Local 627's strike against Hoffman was compulsion upon the latter, at least implicitly, to agree to cease doing business with Long Rock and Walker. Such an agreement would have been violative of the provisions of Section 8(e) of the Act.[9] Since

8. Section 303 provides, in pertinent part: "(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b).(4) of this title.

"(b) Whoever shall be injured in his business or property by reason or (sic) any violation of subsection (a) of this section may sue therefor in any district court of the United States * * * without respect to the amount in controversy, * * * and shall recover the damages by him sustained and the cost of the suit." 29 U.S.C. § 187.

9. Section 8(e) provides, in pertinent part: "(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, * * * to cease doing business with any other person, * * * : *Provided*, that nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting or repair of a building, structure, or other work: * * *." 29 U.S.C. § 158(e).

its demands related to both on-site drivers and drivers transporting materials to the site, Local 627 is not entitled to the protection of the construction-site exception contained in that subsection.

3. The activity of Local 627 in provoking the strike against Hoffman with an object to compel Hoffman to reorder its subcontracts with Long Rock and Walker to include restrictions therein which would have been violative of Section 8(e) was an unfair labor practice proscribed by Section 8(b)(4)(i) and (ii)(A) of the Act.[10]

4. The activity of Local 627 in provoking the strike against Hoffman with an object of compelling Hoffman to cease doing business with Long Rock and Walker was an unfair labor practice proscribed by Section 8(b)(4)(i) and (ii)(B) of the Act.[11] The "cease doing business" provision includes not only the complete cessation of business with another person, but, also, the compulsion to the modification of a valid contractual relationship in such manner as to restrict, or substantially change, or disrupt, the business relationship between the prime contractor and his subcontractor. NLRB v. Carpenters Dist. Council of New Orleans & Vic., 407 F.2d 804, 806 (5 Cir. 1969).

5. The activity of Local 627 in provoking the strike against Hoffman with an object of compelling the reassignment of all truck driving work in conjunction with the Princeville project to Local 627 members, to the exclusion of Local 15 members, was an unfair labor practice proscribed by Section 8(b)(4)(i) and (ii)(D) of the Act.[12]

6. There is no viable factual basis for the averment by Local 627 that Hoffman was primarily liable for the compliance by its subcontractors with the Agreement. Local 627's interpretation of the joint committee ruling on June 10, 1971, as rendering Hoffman primarily liable for the compliance of Long Rock and Walker with the agreement, would have the legal effect of enforced termination of contractual relationships permitted by the agreement[13] and previously approved by Local 627.

7. Barker's attempt to abrogate the pre-job conference agreement was a legal nullity which cannot insulate Local 627 against the consequences of its violation of the provisions of Section 8(b)(4).

8. The undisputed facts render the work-recapture doctrine of the *Woodwork Manufacturers* case inapplicable to this decision.

10. Subsection 8(b)(4) provides, in pertinent part:
  "8(b) It shall be an unfair labor practice for a labor organization or its agents—
  *   *   *   *   *
  "(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike *  *  * ; or (ii) to threaten, coerce or restrain any person engaged in commerce or in an industry affecting commerce, when in either case an object thereof is—
  "(A) forcing or requiring any employer *  *  * to enter into any agreement which is prohibited by subsection 8(e) of this section;
  "(B) forcing or requiring any person to cease *  *  * doing business with any other person, *  *  * : *Provided*, that nothing contained in this clause (B) shall be construed to make

unlawful, where not otherwise unlawful, any primary strike or primary picketing;
  *   *   *   *   *
  "(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization *  *  * rather than to employees in another labor organization, *  *  * unless such employer is failing to conform to an order or certification by the Board determining the bargaining representative for employees performing such work: *  *  *" 29 U.S.C. § 158(b)(4)(i) and (ii)(A), (B), (D).

11. See text quoted in Note 10.

12. See text quoted in Note 10.

13. The Articles of Construction Agreement expressly provided for the subcontracting of hauling, with the proviso that the prime contractor's equipment be first employed for that purpose.

9. The strike by Local 627 was secondary activity undertaken against a neutral employer for the purpose of enforcing modification of labor relationships between other employers and their employees.

10. There are no genuine issues of material fact to be decided.

11. Hoffman is entitled to a judgment against Local 627 as prayed in its motion for summary judgment.

It is ordered, accordingly, that judgment shall be entered immediately for plaintiff and against the defendant Local 627, adjudicating that said defendant is liable to Hoffman under the provisions of Title 29, United States Code, Section 187, for its provable damages, if any, resulting from the strike involved herein, together with its costs of suit.

It would appear that this order, while a final determination so far as this court is concerned, insofar as it goes, is interlocutory in character and not a final judgment in this case, because the question of damages remains for determination, and the remaining interests or liabilities, if any, or the defendants other than Local 627 remain for adjudication. With respect to the provisions of Rule 4(b), F.R.Civ.P., there is no just reason for delay in entry of the judgment above directed as a final determination of this court on the points involved.

On the question of possible immediate appeal from said judgment, as provided under the circumstances set forth in Section 1292(b), Title 28, United States Code, two general observations should be made:

1. In a Pre-Trial Order approved by the then parties and entered by the court on March 10, 1972, the following recitation appears:

"The issue of liability will be tried first, and each party shall have the right to appeal the Court's judgment concerning this issue pursuant to paragraph 1292(b) of Title 12 (sic) U.S. C., and consistent therewith. Thereafter, the issue of damages will be tried, if necessary."

Subsequently, a Second Amended Complaint was filed, with leave of court, substituting Teamsters Joint Council No. 65 for the Illinois Conference of Teamsters as a defendant. That complaint was answered and the subject motion for summary judgment was filed. It would seem clear, however, that the spirit of that mutual commitment between plaintiff and Local 627, with this court's approval, should be carried out insofar as possible, subject, of course, to the approval of the United States Court of Appeals for the Seventh Circuit, as required for such appeal by Section 1292(b), Title 28, United States Code.

2. The Court of Appeals conceivably could disagree with conclusions of law leading to said judgment of liability herein and reverse the same. In that event, the ultimate termination of this litigation might be materially advanced because there would then be no occasion to try any issues of damages. Furthermore, should such disagreement eventuate, it would then seem quite presumptuous of this court to now assert that there is no substantial ground for difference of opinion on the proper application of the statutes here involved to the established facts of this case, even though this court might now be firmly of that opinion.

Accordingly, this statement is considered to be the statement in writing of the district judge referred to in said Section 1292(b), to permit application to the Court of Appeals for an immediate appeal from this order, without being a statement that this court considers its said decision in any sense to rest on insubstantial or uncertain grounds.