**GEO. E. HOFFMAN & SONS, INC.,**
a corporation, Plaintiff,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 627,** a labor organization, Defendant.

Civ. No. P-3267.

United States District Court,
S. D. Illinois, N. D.

Dec. 6, 1974.

---

Karl W. Grabemann, Chicago, Ill., Stuart I. Cohen and Jay G. Swardenski, Peoria, Ill., for plaintiff.

Gerry M. Miller, Milwaukee, Wis., Sidney D. Davidson, Peoria, Ill., for defendant.

## DECISION AND ORDER ON DAMAGES

ROBERT D. MORGAN, Chief Judge.

This is a suit for damages under Section 303 of the Labor Management Relations Act of 1947, as amended (Title 29, United States Code, § 187). On January 10, 1973, through a written decision and order (352 F.Supp. 677), this court decided that defendant, Local 627, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "Local 627"), is liable to plaintiff for its provable damages, if any, resulting from a strike which said defendant maintained against plaintiff from June 17, 1971 through August 6, 1971. By agreement, the issues of liability and damages had been separated for trial,[1] and the damage question has now been tried before the court, without a jury, on July 8, 1974 through July 16, 1974. Proposed findings of fact and conclusions of law have been filed by both parties.

The matter of damages is strongly contested, plaintiff claiming over $416,000 and defendant conceding only about $4,500 of specific out-of-pocket expenses clearly caused by the strike. The main contest is over the claimed speculative nature of plaintiff's asserted losses, it being clear that the strike actually did prevent accomplishment of much work by plaintiff on some 34 work days out of an eight-month construction season, which was generally about the busiest and most profitable season in the history of the industry in which plaintiff is engaged. The courts have acknowledged that precise calculation of damages is not possible in this situation, but have also recognized that it would be intolerable to pretend that substantial damages were not suffered, or to let the party re-

---

1. The parties agreed upon separation of the issues to provide opportunity for interlocutory appeal of the decision on liability. That decision here was certified for appeal under Rule 54(b), F.R.Civ.P., and § 1292(b) of Title 28, United States Code, and the United States Court of Appeals for the Seventh

Circuit granted Local 627 permission to appeal on February 7, 1973, in its case number Misc. 73-8206. That appeal was dismissed on May 24, 1973 in case number 73-1386, however, "for the reason that the application for leave to appeal * * * was not timely filed."

sponsible escape the obligation for reasonable indemnification for lost profit, simply because determination of exactly what would have happened but for the illegal strike cannot be positively ascertained. *See* Abbott v. Local Union of Plumbers, No. 142, 429 F.2d 786 (5 Cir. 1970); United Steelworkers v. CCI Corp., 395 F.2d 529 (10 Cir. 1968); Int. Union of Operating Engineers, Local 653 v. Bay City Erection Company, 300 F.2d 270 (5 Cir. 1962); Osborne Mining Company, Inc. v. United Mine Workers, 279 F.2d 716 (6 Cir. 1960).

Having carefully considered the evidence adduced at the trial herein on the issue of damages, as well as the scholarly briefs and proposals submitted on behalf of the parties, the court is as fully advised as possible and does make the following:

## FINDINGS OF FACT

1. Plaintiff, Geo. E. Hoffman & Sons, Inc. (hereinafter sometimes referred to as "Hoffman"), is a bituminous paving contractor specializing in the patching, widening and resurfacing of highways, roads and streets in the Illinois counties of Peoria, Woodford, Tazewell, Fulton, McDonough and Marshall.

2. 1971 was one of the best, if not the best, years in terms both of weather conditions and work availability for contractors performing the type of work engaged in by Hoffman in the areas where Hoffman normally operates. The strike period was an especially good period within the 1971 season for performing such work, as well as for obtaining it.

3. Within the 91½ days during the 1971 construction season on which Hoffman did perform work, Hoffman produced 211,777 tons of asphalt for projects it had under contract. Despite the strike, Hoffman's total sales in 1971 were $5,514,089, which was the highest in its history to that time.

4. The strike of Local 627 caused failure of the Hoffman organization to accomplish revenue-producing work on 34 work days during the strike period, which but for the strike would have been highly productive days.

5. During the strike period and but for the strike, Hoffman would have made profit on over-the-counter sales of various materials of $21,448.15.

6. As a result of the strike, Hoffman incurred certain specific expenses, which it would not otherwise have sustained, for space and equipment rental and utility charges in the amount of $4,423.92.

7. Hoffman also incurred barge demurrage and barge pump rental charges of over $12,500 on barges of stone which were not unloaded until after the strike, but known reasonable and possible steps could have been taken to have said barges moved and unloaded during the strike, which would have saved at least $9,500 in getting said stone to the place where it was ultimately used. Accordingly, allowable damages on this item of delayed stone delivery are limited to $3,000.

8. After and because of the strike, Hoffman was required to perform certain preparatory work before construction work could be resumed on projects that were in process at the inception of the strike. The total labor cost necessary to accomplish such preparatory work was $2,476.43.

9. Hoffman also suffered substantial expense in extra charges for hauling "hot mix" after the strike on its project near Princeville, Illinois, due to the election of C. A. Walker Truck Lines, Inc. and Long Rock Co. not to resume this hauling for Hoffman after the strike because they feared Teamster grievances would be filed against them. The substitute trucker charged Hoffman more. Though there may be substance to the belief that the basic unfair labor practice herein of Local 627 was the impelling cause of this loss which Hoffman did bear, there is no showing of efforts by Hoffman to collect it from its subcontractors who apparently violated their prior agreements for the hauling. Apparently neither Walker nor Long

Rock made any effort to perform its contract, and it is not clear that Hoffman even asked either of them to do so. Under the circumstances, the court does not find this extra hauling expense to be an element of Hoffman's damage against Local 627.

10. Hoffman's claim of extra labor costs because of strike delay on the Greater Peoria Airport project, which Hoffman had in 1971 as a joint venture with Seneca Petroleum Company, is simply too speculative in relation to the strike to assess as damages. There are too many other possible reasons for the delays involved, and also too many untried means of avoiding the delay, if that was a goal of Hoffman management. It simply cannot be determined that such extra costs as were incurred are elements of damage proximately caused by the strike.

11. The amount of liquidated damages Hoffman suffered on the airport contract, even reduced by its claim for the MATS' work, is not sufficiently shown to have been caused by the strike to make a finding that such costs are a proper element of damages here.

12. The expense of delay into 1973 in the operational status of Hoffman's new "hot storage silo system" (purchased in the fall of 1970), rather than being used for the last 34 days of the 1972 season, as allegedly anticipated, is too remote and speculative for a finding that it was caused by the strike. It has not been shown that the strike period itself, or some other possible times before or after the strike, could not have been utilized for erection of the system by available personnel to avoid the delay in use which was suffered.

13. Hoffman incurred legal fees and related expenses in the amount of $2,018.22, which were directly caused by the strike and efforts to end the same.

14. The Local 627 approach to computation of lost profit for the work days lost during the strike by determining a daily average profit over a six-year period is inappropriate under the circumstances here, which involve 34 almost consecutive prime work days in the middle of one extraordinarily good construction season.

15. The Hoffman approaches to computation of lost profit for the work days lost during the strike, except for the one approach involving actual contract work lost, are also inappropriate in these circumstances because even in a prime work period of a prime season with much work available, it cannot fairly be assumed that a volume of work which was not bid would have been both bid and received in such order as to keep the workload and facilities in reasonable balance for the whole season.

16. There were nine specific jobs, which Hoffman had under contract before the inception of the strike or which were awarded following the onset of the strike, which contracts Hoffman quite certainly would have performed to completion but for the strike, and which contracts were in fact lost or necessarily contracted to others without profit. These contracts would have represented definite additional contract revenue for Hoffman for the 1971 season of $202,034.65.

17. The so-called Farmington Road job, which was let after the strike was over but on which Hoffman did not bid, cannot be fairly considered as a job which Hoffman would definitely have received but for the strike.

18. No other specific work which Hoffman neither bid nor received can fairly be said to have been lost due to the strike; but with the extremely high volume of work available of the type Hoffman was capable of doing, it would be grossly unfair to pretend that Hoffman would not have been otherwise productively occupied at least some of the strike period. If it did not do the exact patching work it expected to do as subcontractor in the amount of some $400,000, it would have done at least half that much similar work for others, or at least $200,000 of additional contract revenue would have been received by Hoffman in 1971 but for the strike.

19. The gross profit which would have been earned on all such additional contract revenue, found in Findings 16 and 18, is 20.93% thereof, or $84,145.85, after taking proper account of the variable expenses which would have been increased by such additional contract revenue, and the fixed expenses which would not.

20. While it is almost a moral certainty that money damages suffered by plaintiff due to the strike herein were substantially greater, perhaps several times greater, there is no other measure thereof sufficiently accurate for application and no other proof herein of sufficient certainty to support a judgment. The total damage proved herein is $117,512.57, being the total of the sums found in the foregoing Findings numbered 5, 6, 7, 8, 13 and 19.

21. Either of the following conclusions of law which might more appropriately be considered a finding of fact, and all statements of fact in the narrative at the outset hereof, preceding the specific findings set forth in numbered paragraphs.

## CONCLUSIONS OF LAW

1. Jurisdiction of this cause, the standing of Hoffman herein to sue, and the liability of Teamster Local 627 for provable damages, were each established in an earlier proceeding. (Geo. E. Hoffman & Sons, Inc. v. Teamsters, 352 F. Supp. 677 (S.D.Ill.1973).)

2. Hoffman has established by competent proof that it was damaged to the extent of $117,512.57 by the strike engaged in by Teamster Local 627, which strike constituted an intentional disruption of Hoffman's business on an illegal basis.

3. Any of the foregoing Findings of Fact and narrative statements which might more appropriately be considered to be conclusions of law.

## JUDGMENT ORDER

It is hereby ordered, adjudged and decreed that judgment in the amount of $117,512.57 is entered in favor of plaintiff, Geo. E. Hoffman & Sons, Inc., and against defendant, Local 627, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Such judgment shall bear interest pursuant to Section 1961, Title 28, United States Code, and plaintiff's costs herein are likewise to be taxed against defendant.